MOSES HOOPER v. CHARLES ELIOT PIKE and Another.[1]

November 10, 1897.

Nos. 10,885—(70).

**Principal and Surety—Promise of Third Person—Extension of Time—Consideration.**

An extension of the time of payment is sufficient consideration for the promise of a third party, as surety, to pay the debt.

**Same — Revival of Liability — New Promise to Pay — Acknowledgment of Existence of Debt.**

After a surety has been released by an extension of the time of payment to the principal debtor, the liability of the surety may be revived by his new promise to pay, or by his absolute and unqualified acknowledgment of the existence of the debt, which implies a new promise to pay; at least, if such new promise or acknowledgment is in writing.

Appeal by plaintiff from an order of the municipal court of St. Paul, Twohy, J., denying his motion for a new trial. Reversed.

*Charles N. Akers* and *D. D. Williams*, for appellant.

Against plaintiff's objection the court should not have permitted defendant, the father, to prove that he was surety. Anderson v. Anderson, 4 Dana (Ky.) 352; Diversy v. Moor, 22 Ill. 331; Marsh v. Low, 55 Ind. 271; Cronise v. Kellogg, 20 Ill. 11; Nowak v. Excelsior, 78 Ill. 307; Murray v. Judah, 6 Cow. 484; Fentum v. Pocock, 5 Taunt. 192; Nichols v. Norris, 3 Barn. & Ad. 41. Rule as to parol evidence to vary contract by blank indorsement. Charles v. Denis, 42 Wis. 56; Smith v. Caro, 9 Ore. 278; Johnson v. Ramsey, 43 N. J. L. 279; Martin v. Cole, 104 U. S. 30; Doolittle v. Ferry, 20 Kan. 230; Farr v. Ricker, 46 Oh. St. 265; Abrey v. Crux, L.·R. 5 C. P. 37; Young v. Austen, L. R. 4 C. P. 553; Courtney v. Hogan, 93 Ill. 101.

The extension of time to the son was at the father's request, hence the surety is estopped to say extension was without his consent. Rutherford v. Brachman, 40 Oh. St. 604. The father looked upon the extension to his son as a favor to himself as well. In such case a different rule applies as to consent to, or waiver of, exten-

[1] Reported in 72 N. W. 829.

sion from the rule in purely commercial transactions. Solomon v. Gregory, 19 N. J. L. 112; Furber v. Bassett, 2 Duval (Ky.) 433. Extension of time to principal is no defense to surety if surety consented. Such consent may be by implication. Solomon v. Gregory, supra; Clark v. Devlin, 3 Bos. & Pul. 363; Rutherford v. Brachman, supra; First v. Whitman, 66 Ill. 331; New Hampshire v. Colcord, 15 N. H. 119. Or by waiver after the extension. Smith v. Winter, 4 M. & W. 454; Fowler v. Brooks, 13 N. H. 240; Crosby v. Wyatt, 10 N. H. 318. Or by a new promise without consideration. Bramble v. Ward, 40 Oh. St. 267; Stevens v. Lynch, 12 East, 38; Fowler v. Brooks, supra; Crosby v. Wyatt, supra; First v. Whitman, supra. Same rule in case of failure of protest. Lockwood v. Bock, 50 Minn. 142; Yeager v. Farwell, 13 Wall. 6; Third v. Ashworth, 105 Mass. 503; Armstrong v. Chadwick, 127 Mass. 156; Rindge v. Kimball, 124 Mass. 209; Harrison v. Bailey, 99 Mass. 620; Tebbetts v. Dowd, 23 Wend. 379.

If the acceptor knew the facts, ignorance of the law does not avail. Third v. Ashworth, supra; Rindskopf v. Doman, 28 Oh. St. 516; Stevens v. Lynch, supra; Matthews v. Allen, 16 Gray, 594; Tebbetts v. Dowd, supra. Evidence of waiver of a prerequisite is competent to prove allegation of the existence of the prerequisite waived. Harrison v. Bailey, 99 Mass. 620; President v. Richardson. 5 Pick. 436; Greenleaf, Ev. §§ 190, 197; Norton v. Lewis, 2 Conn. 478; Williams v. Matthews, 3 Cow. 252; Tebbetts v. Dowd, supra.

*Frederic A. Pike,* for respondent.

CANTY, J.

On November 26, 1889, the defendant Charles Eliot Pike was indebted to plaintiff in the sum of $200, for which the latter held the note of the former, who on that day drew on his father, the defendant C. E. Pike, a draft in favor of plaintiff for the sum of $200, due in 90 days from that date, with interest on that sum at the rate of 7 per cent. per annum. The draft was accepted by the father, and delivered to plaintiff, who thereupon surrendered the note. This action was brought on the draft. The court below found in favor of the father, C. E. Pike, and from an order denying a new trial plaintiff appeals.

The court below seems to have found for the defendant C. E. Pike on several grounds, each of which is contrary to the law and the evidence; at least, if the court did not find for this defendant on all of these grounds, it is impossible to tell on which ground it did find for him, as the only conclusion of law is that the plaintiff take nothing against this defendant, and that the latter recover his costs and disbursements of this action.

The court found, as a finding of fact, "that there was no agreement between plaintiff and defendant C. E. Pike as to said draft, or as to said indebtedness of defendant Charles Eliot Pike." When C. E. Pike accepted the draft, and it was delivered to plaintiff, it is clear that the former made an agreement with the latter "as to said draft or as to said indebtedness." The court further found "that the indorsement and acceptance of said draft by defendant C. E. Pike was without consideration." If this can be called a finding of fact, it is equally unfounded. It is clear that, by receiving the draft and surrendering the son's individual note, plaintiff extended the time of payment for 90 days. This was a good and sufficient consideration for the acceptance by the father, even if, as he contends, he was but a mere surety, and the son remained the principal debtor. Nichols v. Dedrick, 61 Minn. 513, 63 N. W. 1110. See, also, Turle v. Sargent, 63 Minn. 216, 65 N. W. 349.

The court further found "that upon the maturity of said draft and thereafter the plaintiff, by sundry agreements with defendant Charles Eliot Pike, extended the time of the payment of the indebtedness of said Charles Eliot Pike to plaintiff, all without the knowledge or consent of defendant C. E. Pike." It is true that, after the maturity of the draft, the time of payment of the indebtedness was extended a number of times. It is also possible that the evidence will warrant a finding that, as to some of these extensions, the father did not, at or prior to the extension, consent to the same. But the evidence is conclusive that he did consent to several of the extensions at or prior to the time the extension was given, and that, after all the extensions had been given, he recognized his liability in such a way as to waive his release and revive his promise, if he had been released. During the time of these transactions, plaintiff resided at Oshkosh, Wisconsin, C. E. Pike resided at St. Paul, Min-

nesota, and Charles Eliot Pike, his son, at Washington, District of Columbia.

When plaintiff received the $200 draft, he discounted it at his own bank. At its maturity, Pike, the son, agreed to pay one-half, and plaintiff agreed to renew the other half for three months. The son failed to carry out the agreement. He subsequently sent to plaintiff his note, indorsed by his father, for $105, which included interest, and his own individual note for the other one-half. Plaintiff used these notes at his bank, instead of the $200 draft which he took up but did not surrender to defendants. Thereafter, for the purpose of making successive renewals of the indebtedness, the son sent his own notes, not indorsed by his father, for the $200 and interest thereon; and these were, one after another, used at the bank as a renewal of the indebtedness to it incurred by the discount of said draft. These renewals continued until 1894, the last one being made March 18 of that year.

In the meantime the following correspondence took place between plaintiff and Pike, the father: On June 6, 1890, the father wrote plaintiff that he was disappointed because his son did not take care of the $105 note above referred to. On June 11, 1890, plaintiff wrote the father as follows:

"Since writing you a few days since, I find that I have your acceptance of Charles Eliot Pike's draft for $200, which covers the same $105 as was covered by your indorsement of Charles Eliot Pike's note. I do not wish to hold duplicate evidence of the same indebtedness. I have therefore canceled your indorsement of Charles Eliot Pike's note for $105 and sent the indorsement to Charles Eliot Pike this day."

On October 7, 1890, the father wrote that he was about to go to Europe, to be gone a few months. He added:

"I wished to see you in relation to the debt which my son Charles owes you. It has troubled me that he has not already paid you, and I would like to settle it up for him before I leave. * * * May I presume that, if he still wishes more time, you will wait upon him until my return?"

The father remained in Europe about two years. On December 27, 1893, about a year after his return, plaintiff wrote him as follows: "Pursuant to your request made several years since, I

have continued my indorsement for your son Charles Eliot." Then
follows a statement of the amount due, including items of interest
for successive periods of renewal, the total being $238.30. He adds:
"I hold your acceptance for $200 and interest seven per cent., dated
November 26, 1889." The father answered:

"Just before I went abroad, my son wrote, in answer to my inquiry, that I need give myself no concern about the matter of his note; and, perhaps too carelessly, I have not written to him about it since my return. You have certainly been very tolerant, and what you say is a matter of surprise to me. I will only add that, after hearing from my son, I will give you a more definite reply than I now do."

On January 7, 1895, plaintiff wrote:

"Your son Charles Eliot Pike does not keep up payment on his note to me. There is now due upon your acceptance about $233. Please let me know when you can arrange for payment, or part payment, on the same."

No answer was made to this letter, and the claim was put in the hands of an attorney for collection. On March 5, 1895, the father wrote, stating that he had been informed by the attorneys that they had for collection his acceptance made some time since in favor of his son. He added:

"If my income during the last year had not been materially (though I hope only temporarily) diminished, I would do something at once towards paying my son's obligation (and incidentally my own)."

He then stated that his son expected to obtain funds to pay at least a part of the amount due. He added:

"As to myself, in the event of my son's default, I cannot now see my way to make a payment of any part of the amount due until July. Mr. F. suggests that, if nothing is paid immediately, it might be needful to put the claim in judgment. But, while I do not wonder at your impatience, I hope you will not consider that step necessary."

It will be observed that this letter was written about a year after the last extension of time to the son.

Here we have an absolute acknowledgment by the father of his

liability. Such an acknowledgment waives the statute of limitation after the same has run. Wood, Lim. Act. § 68; 13 Am. & Eng. Enc. 718, note 2. It is well settled that, where a surety has been released by an extension of time of payment without his consent, he may, without any new consideration, revive his liability by a new promise; at least, if it is in writing. Brandt, Sur. § 300; Smith v. Winter, 4 M. & W. 454; Stevens v. Lynch, 12 East, 38; Fowler v. Brooks, 13 N. H. 240; Bramble v. Ward, 40 Oh. St. 267. We are of the opinion that an absolute and unqualified acknowledgment of the liability in writing will also revive the liability, and imply a new promise. See cases last above cited.

The point is made that the trial court has not found any such waiver of the release of the father, and has not been requested to make any additional finding to that effect. Whether or not this point is well taken we will not stop to consider, as the court below has misconceived the rights of the parties to such an extent and in so many respects that there must, in any event, be a new trial.

The order appealed from is reversed.